FERDINAND LUSTWERK *vs.* LYTRON, INC. & others.

Suffolk.   May 11, 1962. — June 29, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Corporation,* Ultra vires, Political contribution. *Corrupt Practices. Taxation,* Income tax. *Words,* "Materially affecting."

The question, to be submitted to the voters at a State election, of adopting a constitutional amendment authorizing the Legislature to impose a "graduated" income tax, potentially more burdensome than the existing income tax, would be a question "materially affecting . . . the property, business or assets of" Massachusetts business corporations within G. L. c. 55, § 7, as amended through St. 1946, c. 537, § 10, so that expenditures by them for the purpose of influencing the voters to vote against the amendment would not be prohibited by § 7.

BILL IN EQUITY filed in the Superior Court on March 12, 1962.

The suit was reported by *Lurie*, J.

*Philander S. Ratzkoff* (*John W. White* with him) for the plaintiff.

*Elliott V. Grabill* (*Douglas L. Ley & Nathaniel J. Young, Jr.* with him) for the defendants.

CUTTER, J. Lustwerk, the holder of 392 of the 2,364 shares of the common stock of Lytron, Inc. (Lytron), and one of its directors, seeks to enjoin Lytron and its other directors (the holders of 1,832 common shares) from expending $500 for advertising, printing, mailing, and contributing "to any committees formed . . . for the purpose of influencing the voters to vote against the [proposed] so-called graduated income tax amendment[1] to the Massachusetts Constitution . . . in the [S]tate election in November, 1962." Lustwerk asserts that such an expenditure would be illegal under G. L. c. 55, § 7[2]. Lytron is a Massachusetts

---

[1] It is stipulated that the following proposed constitutional amendment has been approved in two successive sessions (1959 and 1961) of the Legislature in joint sessions and will be submitted to the voters on the ballot at the election in November, 1962: "Article —. Full power and authority are hereby given and granted to the general court, in the alternative to the exercise of the power and authority to impose and levy a tax on incomes in the manner provided in Article XLIV of the amendments to the Constitution of the Commonwealth, to impose and levy a tax on incomes at rates which are proportioned or graduated according to the amount of income received, irrespective of the source from which it may be derived, and to grant reasonable exemptions, deductions and abatements. Any property the income from which is taxed under the provisions of this article may be exempted from the imposition and levying of proportional and reasonable assessments, rates and taxes as at present authorized by the constitution. This article shall not be construed to limit the power of the general court to impose and levy reasonable duties and excises."

[2] Section 7 (as amended through St. 1946, c. 537, § 10) reads in part: "No . . . business corporation incorporated under the laws of . . . the commonwealth and no officer or agent acting in behalf of any corporation mentioned in this section, shall directly or indirectly give, pay, expend or contribute, or promise to give, pay, expend or contribute, any money or other valuable thing for the purpose of aiding, promoting, or preventing the nomination or election of any person to public office, or aiding, promoting or antagonizing the interests of any political party, or influencing or affecting the vote on any question submitted to the voters, *other than one materially affecting any of the property, business or assets of the corporation.* No person or persons, no political committee, and no person acting under the authority of a political committee, or in its behalf, shall solicit or receive from such corporation . . . any gift, payment, expenditure, contribution or promise to give, pay, expend or contribute for any such purpose" (emphasis supplied). Section 7 further provides that for a violation of the section a corporation shall be punished by a fine of not more than $10,000 and an officer, director or agent may be fined not more than $5,000 or imprisoned for not more than six months.

business corporation doing business in Cambridge. The record does not disclose the nature of its business. On March 9, 1962, Lytron's directors voted three to one (Lustwerk voting in the negative) to make a $500 contribution toward expenses in opposing the amendment.

The defendants, by answer, admit the allegations of the bill, and assert in effect (1) that Lytron is a person entitled to constitutional protection in questions concerning freedom of speech, so that G. L. c. 55, § 7, may not be interpreted to prevent the defendants from using corporate funds to influence voters on the question of the proposed amendment, and (2) that § 7 does not prevent such expenditure. The defendants further assert that an actual controversy has arisen and request declaratory relief under G. L. c. 231A, § 6.

The case was presented on the pleadings and a statement of agreed facts. It has been reported without decision.[3]

1. Lytron's proposed contribution may be enjoined if it, in any event, would be illegal for a Massachusetts business corporation to make the expenditure. The bill adequately avers that Lustwerk, as a stockholder, and Lytron, as a corporation, are aggrieved by the proposed expenditure, alleged to be ultra vires. See *Converse* v. *United Shoe Mach. Co.* 209 Mass. 539, 540–541; *Long* v. *Brockton Taunton Gas Co.* 341 Mass. 143, 144. See also *Turner* v. *United Mineral Lands Corp.* 308 Mass. 531, 538–539; *Andersen* v. *Albert & J. M. Anderson Mfg. Co.* 325 Mass. 343, 347–348.

Although Lustwerk's bill states, in general terms, that the expenditure "would constitute an ultra vires act by the corporation," the only ground suggested for this allegation is "that the diversion of the corporation's funds for this purpose is unlawful under . . . c. 55, § 7." No facts have been alleged or proved tending to show that the expenditure would be ultra vires as in other respects beyond the cor-

---

[3] A certificate has been filed that the Attorney General was notified on March 28, 1962, by registered mail that this case would be argued at the sitting in May, 1962. There has been no request by him for leave to intervene or to be heard.

porate powers of Lytron.[4]   Accordingly, no basis has been shown for injunctive relief on any such ground.   We need consider only whether § 7 prohibits such expenditures by Massachusetts business corporations.   We attempt no declaration whether other grounds of illegality exist.

2.   The defendants in effect contend that the proposed constitutional amendment, on its face, presents the probability that (if it is adopted) some new and burdensome types of taxes will be imposed (a) directly on corporations, including Lytron, doing business in Massachusetts, and (b) on individuals within Massachusetts, in a manner likely materially to affect the business and property interests of Lytron.   Lytron argues "that one of the most important elements of the business climate is the tax structure in which businessmen operate," and that "any change in the [Massachusetts] tax structure . . . which affects individuals would probably affect their . . . compensation as employees . . . .   This in turn would affect . . . [Lytron's] wage and compensation structure . . . ."   This, Lytron says, "would materially affect . . . [Lytron's] business."

No facts appear in the record which tend to establish that any tax change will have any special effect on Lytron, as distinguished from other corporations, either because of the nature of its corporate business or its competitive situation.   The defendants' argument, if valid, would apply with equal force to other business corporations operating within Massachusetts.   We thus consider only whether the possibility or probability (in the event of adoption of the amendment) of a generally less favorable tax climate for Massachusetts business corporations is a sufficient basis for a decision by Lytron's directors that the amendment is a "question submitted to the voters . . . materially affecting any of the property, business or assets of the corporation" within the meaning of c. 55, § 7, as amended (fn. 2).

---

[4] See the cases on allegedly ultra vires activities of Massachusetts business corporations collected in *Wasserman* v. *National Gypsum Co.* 335 Mass. 240, 242–244.   See also *Widett* v. *Pilgrim Trust Co.* 336 Mass. 738, 744; *Sun Oil Co.* v. *Redd Auto Sales, Inc.* 339 Mass. 384, 387–388; *Long* v. *Brockton Taunton Gas Co.* 341 Mass. 143, 144–145.

3. The proposed constitutional amendment if adopted, in various respects, will give to the Legislature a substantially broader power than now exists to impose income taxes upon corporations and individuals within Massachusetts. See *Opinion of the Justices,* 266 Mass. 583; *Opinion of the Justices,* 266 Mass. 590; *Riesman* v. *Commissioner of Corps. & Taxn.* 326 Mass. 574, 575–577; *State Tax Commn.* v. *Wheatland,* 343 Mass. 650, 651–653; *Opinion of the Justices, post,* 766, 768–769. See also *Opinion of the Justices,* 270 Mass. 593. These authorities indicate that no income tax, graduated in relation to the amount of income received, can now be imposed as a property tax upon either corporations or individuals. The proposed amendment, to an extent that need not now be determined precisely, authorizes such an income tax by a provision separate from the existing constitutional provision for "reasonable duties and excises upon any . . . commodities." See Constitution of Massachusetts, Part II, c. 1, § 1, art. 4. See as to excises now imposed pursuant to this provision, G. L. cc. 60A, 63, 63A, 64, 64A, 64B, 64C, 64D, 64E, 64F, 65, 65A. Those under c. 65 (and indirectly those under c. 65A) are imposed at graduated rates. See Nichols, Taxation in Massachusetts (3d ed.) p. 673. The proposed amendment, if adopted, would seem to avoid the restraint upon income taxation created by the provision of Amendment 44 that income taxes "shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property." Experience under the Federal income tax acts since 1913 has shown that, when graduated income taxes are permitted, rates may rise rapidly in proportion to income. See, e.g., Int. Rev. Code of 1954, §§ 1, 11 (as amended). We refrain from any appraisal of the possible consequences of this proposed expanded power to tax. Nevertheless, we cannot say on the basis of this somewhat meager record that a board of directors of a business corporation could not reasonably decide that its business would be materially affected by the grant of such an expanded taxing power.

4.  This brings us to the question whether such a general possible or probable effect upon the business of all corporations of the class of corporations to which Lytron belongs is a "question . . . materially affecting any of the . . . business . . . of the corporation" within G. L. c. 55, § 7, as amended.  There is little pertinent legislative history relating to the most recent (St. 1946, c. 537, § 10) amendment of § 7.  See 1946 House Doc. No. 1602, p. 11.  After the 1921 consolidation of the General Laws and until 1938, c. 55, § 7, stood in the somewhat different form shown in the margin.[5]  By St. 1938, c. 75, the italicized language of the 1921 version (fn. 5, *infra*) was revised to read "except that such a corporation . . . may in good faith publish or circulate paid matter when, under a question submitted to the voters, the taking, purchasing or acquiring of, *or any matter or thing affecting,* any of the property, business or assets of the corporation is involved" (new words added in 1938 italicized).  No explanation of this 1938 change appears in the legislative history.  See 1938 Senate Doc. No. 110.  Nevertheless, we think the much broader language thus introduced in 1938, taken with the general language now (see fn. 2, *supra*) found in § 7, as a consequence of amendments by St. 1943, c. 273, § 1, and St. 1946, c. 537, § 10, requires that the exception in § 7 not be narrowly interpreted.  The words "materially affecting" are equivalent to "having a substantial effect upon," and, with relation to a corporation's "business" and "assets," the new

---

[5] "Section 7.  No . . . business corporation incorporated . . . in the commonwealth and no officer or agent acting in behalf of any corporation . . . shall . . . give . . . any money or other valuable thing in order . . . to influence or affect the vote on any question submitted to the voters.  No person or persons, . . . shall solicit or receive from such corporation . . . any such gift, . . . *except that such a corporation . . . may in good faith publish or circulate paid matter when, under a question submitted to the voters, the taking, purchasing or acquiring of any of the property, business or assets of the corporation is involved,* provided that the name of the corporation appears therein in the nature of a signature, and that, if inserted as reading matter, such matter is preceded or followed by the word 'Advertisement,' in the manner required by section thirty-three" (emphasis supplied).  This was as the consequence of the consolidation of St. 1913, c. 835, § 353 and § 356.  See 1 Report of Joint Special Committee on Consolidating and Arranging the General Laws (1920), p. 435.  See also 1 Preliminary Report of the Commrs. to Consolidate and Arrange the General Laws (1918), p. 83; St. 1907, c. 581; St. 1908, c. 483; St. 1911, c. 422; St. 1912, c. 229.  Material similar to that formerly found in c. 55, § 33, now is set out in G. L. c. 56, § 39, as appearing in St. 1946, c. 537, § 11.  See 1946 House Doc. No. 1602, pp. 13–14, 53.

language seems considerably more comprehensive than the pre-1938 language referring to a ''question'' relating to ''the taking, purchasing or acquiring . . . any of the property, business or assets of the corporation.''[6]   Although the scope of the new language of § 7 is not wholly clear, we think that it is broad enough to include the effect upon a corporation's business and assets of a new and potentially more burdensome tax system.

No decided case affords assistance in interpreting § 7 in respects here relevant.   See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 233, 247–252.   If (as the defendants' answer suggests) there be constitutional doubts about the validity of regulation of a corporation's freedom of expression in connection with elections (see, however, note 27 Fordham L. Rev. 599, 606–607), the interpretation of § 7 which we adopt makes it unnecessary to consider such constitutional issues.   See *Opinion of the Justices,* 341 Mass. 760, 785.

Our interpretation is also consistent with the principle that statutes imposing a criminal penalty ''are to be strictly construed and are not to be extended merely by implication.''   See *Commonwealth* v. *Paccia,* 338 Mass. 4, 6. If a narrower interpretation of the exception now found in § 7 was in fact intended, clear and explicit language to that effect would have been appropriate.

5.   A final decree is to be entered declaring (1) that no facts in the record entitled Lustwerk to injunctive relief to protect either himself or Lytron, and (2) that the provisions of G. L. c. 55, § 7, as amended through St. 1946, c. 537, § 10, do not prohibit the proposed expenditure by Lytron in the absence of proof that Lytron or its directors, for reasons other than the provisions of § 7, lack power to make the proposed expenditure.

*So ordered.*

---

[6] That there was a definite intention to broaden the exception in § 7 may also be shown by the omission from § 7 of the final proviso of the 1938 version (see fn. 5, *supra*) with respect to inserting in material circulated by the corporation the word ''Advertisement.''   See G. L. c. 56, § 39 (as appearing in St. 1946, c. 537, § 11) where similar, but less directly applicable language is found.