THE FIRST NATIONAL BANK OF BOSTON & others[1] *vs.*
ATTORNEY GENERAL & others.[2]

Suffolk.    June 8, 1976. — February 1, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Elections.    Corporation,* Political contribution, Constitutional protection.    *Constitutional Law,* Political contributions, Elections, Freedom of speech and press, Equal protection of laws.    *Due Process of Law,* Vagueness of statute, Presumption or inference.    *Jurisdiction, Civil,* Declaratory relief.

In an action seeking a declaratory judgment as to the constitutionality of G. L. c. 55, § 8, there was no merit to the defendants' contention that the case was not ripe for adjudication. [781]

In an action seeking a declaratory judgment as to the constitutionality of G. L. c. 55, § 8, where there was an actual controversy presented with respect to the statute's general application, scope and construction, the problem of "in-house" publications would necessarily be resolved in the context of the broader issue even though the Attorney General had previously indicated he would not prosecute the plaintiffs under the statute for such "in-house" activities. [781]

Only when a general political issue materially affects a corporation's business, property or assets may that corporation claim First Amendment protection for its speech or other activities entitling it to communicate its position on that issue to the general public, and G. L. c. 55, § 8, which clearly identifies these parameters of corporate free speech is, therefore, not unconstitutional on its face. [781-785]

Where the record in an action for a declaratory judgment did not support the corporate plaintiffs' claim that a proposed constitutional

---

[5] O. W. Holmes, Jr., The Common Law 7 (M. Howe ed. 1963).

[1] New England Merchants National Bank, The Gillette Company, Digital Equipment Corporation, and Wyman-Gordon Company.

[2] Coalition for Tax Reform, Inc., and United Peoples, Inc., interveners.

amendment which would permit the Legislature to impose a gradu-
ated tax on the income of individuals would materially affect their
business, G. L. c. 55, § 8, was not unconstitutional as applied to the
plaintiffs. [785-787]

The provisions of G. L. c. 55, § 8, did not preclude corporate officers,
directors, stockholders, or employees from expressing their views
publicly on the merits of a proposed constitutional amendment,
which would permit the Legislature to impose a graduated tax on
the income of individuals, by means not involving corporate expendi-
tures specifically designed to influence the electoral process, and, as
so construed, the statute is not unconstitutionally overbroad [787-
790]; nor is the statute unconstitutionally vague [790-791].

General Laws c. 55, § 8, does not violate the provisions of arts. 16 or 19
of the Declaration of Rights of the Massachusetts Constitution.
[791-793]

The provisions of G. L. c. 55, § 8, do not deny corporations their con-
stitutional right to equal protection of the laws. [793-794]

The provision of G. L. c. 55, § 8, that "[n]o question submitted to the
voters solely concerning the taxation of income, property or transac-
tions of individuals shall be deemed materially to affect the prop-
erty, business or assets of . . . [a] corporation" does not constitute an
irrebuttable presumption and does not, therefore, deprive corpora-
tions of their right to due process of law. [794-795]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on April 9, 1976.

The case was reserved and reported by *Wilkins*, J.

*Francis H. Fox* (*E. Susan Garsh* with him) for The
First National Bank of Boston & others.

*Thomas R. Kiley*, Assistant Attorney General, for the
Attorney General.

*Ernest Winsor* for Coalition for Tax Reform, Inc. & an-
other, interveners.

LIACOS, J. The plaintiffs brought a declaratory judg-
ment proceeding under G. L. c. 231A alleging that they
intended to expend moneys to publicize, by newspaper ad-
vertisements and other similar methods, their views with
respect to a proposed constitutional amendment which
was to be submitted to the voters as a referendum ques-
tion at the general election on November 2, 1976. The pro-
posed amendment, set out in the margin,[3] would permit,

---

[3] "Article of Amendment. Art.     . As an alternative to levying a
tax on income in the manner provided in Article XLIV of the Amend-
ments to the Constitution, the General Court shall have full power and

but not require, the Legislature to modify the income tax laws of the Commonwealth by imposing a graduated tax on the income of individuals (GIT). The Attorney General (the original defendant herein) indicated that he would prosecute the plaintiffs under the provisions of G. L. c. 55, § 8, as appearing in St. 1975, c. 151, § 1,[4] if they were to expend moneys to publicize their views on the proposed

authority to levy a tax on personal incomes at rates which are graduated according to the total amount of income received, regardless of the sources from which it may be derived, and to grant reasonable exemptions, deductions, credits and abatements to such tax. Further, the General Court may define the tax liability or the total income upon which such tax is levied or the graduated rates at which it is taxed by reference to any provision of the laws of the United States as the same may be or become effective at any time or from time to time and may prescribe reasonable exceptions to and modifications of such provision."

[4] Section 8 provides: "No corporation carrying on the business of a bank, trust, surety, indemnity, safe deposit, insurance, railroad, street railway, telegraph, telephone, gas, electric light, heat, power, canal, aqueduct, or water company, no company having the right to take land by eminent domain or to exercise franchises in public ways, granted by the commonwealth or by any county, city or town, no trustee or trustees owning or holding the majority of the stock of such a corporation, no business corporation incorporated under the laws of or doing business in the commonwealth and no officer or agent acting in behalf of any corporation mentioned in this section, shall directly or indirectly give, pay, expend or contribute, or promise to give, pay, expend or contribute, any money or other valuable thing for the purpose of aiding, promoting or preventing the nomination or election of any person to public office, or aiding, promoting or antagonizing the interests of any political party, or influencing or affecting the vote on any question submitted to the voters, other than one materially affecting any of the property, business or assets of the corporation. No question submitted to the voters *solely* concerning the taxation of the income, property or transactions of individuals shall be deemed materially to affect the property, business or assets of the corporation. No person or persons, no political committee, and no person acting under the authority of a political committee, or in its behalf, shall solicit or receive from such corporation or such holders of stock any gift, payment, expenditure, contribution or promise to give, pay, expend or contribute for any such purpose [emphasis supplied].

"Any corporation violating any provision of this section shall be punished by a fine of not more than fifty thousand dollars and any officer, director or agent of the corporation violating any provision thereof or authorizing such violation, or any person who violates or in any way knowingly aids or abets the violation of any provision thereof, shall be punished by a fine of not more than ten thousand dollars or by imprisonment for not more than one year, or both."

amendment to the general public. The plaintiffs sought a declaration that § 8 is unconstitutional on its face and as applied to them. They began this action by filing a complaint with the clerk of the Supreme Judicial Court for the county of Suffolk. The matter was heard before a single justice who permitted two groups to intervene as additional parties defendant[5] and reserved and reported the case to the full court. The matter was argued before this court on June 8, 1976. Due to the pendency of the election and the significance of the questions raised by this proceeding, an order of this court without opinion was entered on September 22, 1976, and judgment pursuant thereto was entered by the single justice on September 28, 1976.[6]

---

[5] Coalition for Tax Reform, Inc., and United Peoples, Inc. (both nonelected political committees).

[6] The text of that order is as follows: "This is a petition for declaratory judgment brought before the single justice of the Supreme Judicial Court. The plaintiffs seek a declaration that G. L. c. 55, § 8, as appearing in St. 1975, c. 151, § 1, is unconstitutional, both on its face and as applied to them.

"The plaintiffs assert that they intend to use corporate funds to publicize their views on a constitutional amendment which will be submitted to the voters through a referendum on the November 2d ballot and which would authorize the Legislature to impose a graduated personal income tax. They also assert that G. L. c. 55, § 8, unconstitutionally precludes them from doing so and that the Attorney General has indicated he will prosecute apparent violations of the statute. The plaintiffs further assert that there is a case or controversy under G. L. c. 231A, § 1.

"The single justice heard the case on April 26, 1976, and reserved and reported the case without decision. On April 30, 1976, the Coalition for Tax Reform, Inc. and United Peoples, Inc. filed a motion to intervene as parties defendant. The original parties and interveners entered into a supplementary statement of agreed facts and on May 11, 1976, the single justice allowed the motion to intervene and entered a revised reservation and report indicating the changed circumstances.

"The case was heard by the court on June 8, 1976. On consideration of the facts and the law applicable, we rule that the plaintiffs have not shown that G. L. c. 55, § 8, is unconstitutional or an invalid exercise of legislative power. The single justice shall order the entry of an appropriate judgment declaring that the statute is valid and enforceable.

"A rescript and opinion will follow."

The plaintiffs filed a "Motion for Stay or Injunction and Expedited Determination" on September 30, 1976, which was denied by the full

The plaintiffs are two national banking associations organized under the laws of the United States with usual places of business in Boston, and three business corporations (two organized under the laws of the Commonwealth of Massachusetts and one under the laws of the State of Delaware), with either principal or usual places of business in Massachusetts. They all are actively involved in substantial business activities in Massachusetts. They all alleged that the adoption of the proposed amendment would substantially and materially affect their business activities in a variety of ways including, but not limited to, discouraging highly qualified executives and highly skilled professional personnel from settling, working or remaining in Massachusetts; promoting a tax climate which would be considered unfavorable by business corporations, thereby discouraging them from settling in Massachusetts with "resultant adverse effects" on the plaintiff banks' loans, deposits, and other services; and tending to shrink the disposable income of individuals available for the purchase of the consumer products manufactured by at least one of the plaintiff corporations. Although the plaintiffs hold these views, the record does not establish that these views are supported in fact. Rather, the parties have agreed that "[t]here is a division of opinion among economists as to whether and to what extent a graduated income tax imposed solely on individuals would affect the business and assets of corporations." The statute requires generally that a referendum matter "materially affect" a corporation's "property, business or assets" before it may expend moneys to publicize its views on that matter. It states specifically that "[n]o question submitted to the voters solely concerning the taxation of the income, property or transactions of individuals shall be deemed mate-

court on the same date. We note that they filed a "Notice of Appeal" to the Supreme Court of the United States on September 29, 1976. Said appeal appears to be pending before that court. We note further that the proposed amendment was defeated at the polls on November 2, 1976.

rially to affect the property, business or assets of the corporation." The plaintiffs have not shown, on this record, that the type of taxation authorized by the proposed amendment in fact would have such an effect.[7]

1. *Legislative and Judicial History.*

We note that this is not the first time that this type of prohibition has been before us. In *Lustwerk* v. *Lytron, Inc.,* 344 Mass. 647 (1962), we held that a referendum question proposing a constitutional amendment granting the Legislature the power to impose a graduated income tax on either corporations or individuals (or both) reasonably might be thought by the directors of the defendant corporation to be a matter materially affecting the corporation's property, business or assets.[8] We, therefore, held that the statute as then constituted did not prohibit expenditures by such corporations for the purpose of influencing the voters on that proposed constitutional amendment. In *First Nat'l Bank* v. *Attorney Gen.,* 362 Mass. 570 (1972) (*First Nat'l Bank I*), we considered the effect of a legislative amendment of the statute (after *Lustwerk*) which added the following sentence to G. L. c. 55, § 7: "No question submitted to the voters concerning the taxation of the income, property or transactions of individuals shall

---

[7] The "Statement of Agreed Facts" stipulates that forty-one States and the District of Columbia impose income taxes and that thirty-six States and the District of Columbia have graduated income taxes.

[8] The text of the proposed constitutional amendment in issue in 1962 is set forth in the *Lustwerk* case at 648 n.1. The statute in issue in that case prohibited generally corporate contributions and expenditures in regard to elections (G. L. c. 55, § 7, as amended through St. 1946, c. 537, § 10). It is quoted in material part at 648 n.2 of *Lustwerk.* That statute was the precursor of G. L. c. 55, § 8, in issue here but was in significantly different form; it did not contain the sentence now included in § 8, namely: "No question submitted to the voters solely concerning the taxation of the income, property or transactions of individuals shall be deemed materially to affect the property, business or assets of the corporation." The prohibition on corporate political activity was merely stated to preclude corporations from expending or contributing money on matters "other than one materially affecting any of the property, business or assets of the corporation." Thus, neither the parties nor this court in *Lustwerk* had any legislative statement as to what "materially" affected the corporate interests.

be deemed materially to affect the property, business or assets of the corporation." (See St. 1972, c. 458.[9])

The court was divided as to whether the issue of the validity of G. L. c. 55, § 7, could be resolved merely by statutory construction thereof or whether it was necessary to consider its constitutionality. Three Justices took the former view; two Justices took the latter view. All five agreed that the proposed constitutional amendment contained in the 1972 referendum question would authorize the Legislature to impose a graduated income tax on both individuals and corporations, or either. See *First Nat'l Bank I* at 575 (Tauro, C.J.) (Reardon, J., concurring); and at 593 (Quirico, J., with whom Braucher and Kaplan, JJ., join, concurring in the result). Chief Justice Tauro felt impelled in these circumstances to reach the constitutional issue involved in determining the validity of the prohibitions contained in G. L. c. 55, § 7. They came to the conclusion that this statute, as framed in 1972, was invalid because (in part) it did "not meet the requirements of a narrowly drawn law, circumscribing only the evil to be curtailed." *Id.* at 590. However, these Justices were careful to point out that they did "not reach the general question of the manner, mode and extent to which corporate expression may be limited to ensure free elections" (footnote omitted). *Ibid.*

The other three Justices did not find it necessary to reach the constitutional question. Rather, they interpreted the statutory addition as inapplicable to the 1972 referendum question because that question concerned the levying of a graduated corporate income tax as well as a graduated personal income tax. See *id.* at 593 (Quirico, J., concurring). Since three Justices held G. L. c. 55, § 7, inapplicable, and two others viewed it as unconstitutional, the plaintiffs of 1972 (some of whom are now plaintiffs in this matter) prevailed, and were allowed to make contributions

---

[9] The text of G. L. c. 55, § 7, as it stood in 1972 is quoted in *First Nat'l Bank I* at 573 n.3. The text of the referendum question in 1972 is set forth in full in *First Nat'l Bank I* at 572 n.2.

to a political committee to campaign against the proposed amendment. It was defeated.

Subsequent to the decision in *First Nat'l Bank I*, G. L. c. 55 was amended on various occasions. General Laws c. 55, § 7, ultimately became G. L. c. 55, § 8. The most significant post-*First Nat'l Bank I* amendment was to rephrase the second sentence of the first paragraph previously found in § 7 by adding the word "solely." This sentence now reads: "No question submitted to the voters *solely* concerning the taxation of the income, property or transactions of individuals shall be deemed materially to affect the property, business or assets of the corporation" (emphasis supplied).[10]

Further, the referendum question for 1976 did not, like the questions considered in *Lustwerk* and *First Nat'l Bank I*, apply in any way to corporate income taxation. The statutory amendment to § 8 makes it clear that the Legislature has specifically proscribed corporate expenditures of moneys relative to this proposed amendment. We conclude therefore that the plaintiffs' claim that G. L. c. 55, § 8, is unconstitutional must be considered. Before doing that, however, we must first deal with certain procedural problems raised by the defendants.

2. *Procedural Considerations.*

In *First Nat'l Bank I, supra,* a challenge was raised to the constitutionality of the precursor to § 8 in a proceeding for declaratory relief. Where an actual controversy exists we have held that such a proceeding against the Attorney General is an appropriate method of securing a determination of such a claim. *Mobil Oil Corp.* v. *Attorney Gen.,* 361 Mass. 401, 405 (1972), and cases cited. Cf. *Attorney Gen.* v. *Kenco Optics, Inc.,* 369 Mass. 412, 415-416 (1976). The defendants do not dispute the use of this procedure in such circumstances but they argue (a) that this particular case is not ripe for adjudication, and

---

[10] As to the post-*First Nat'l Bank I* revisions of G. L. c. 55, § 8, see St. 1973, c. 348; St. 1973, c. 1173, § 4B; St. 1974, c. 859; St. 1975, c. 151, § 1.

(b) that there is not an actual controversy over one of the issues presented. We disagree.

(a) The defendants ground their lack of ripeness claim on their characterization of the record in this case as "inadequate" to present the issues raised. They suggest that we defer consideration of these issues until after a full trial on the merits. We think that the record in this case, which consists of an extensive stipulation of facts among the parties, is sufficient to support this adjudication and to present the issues raised. The record appendices total some 128 pages; there are 66 paragraphs of stipulated facts and 70 pages of supporting documents relevant to those stipulations. To the extent that the record may be properly characterized as "inadequate," we believe that the inadequacy is related to the plaintiffs' failure on certain evidentiary propositions, a matter we treat below in part 3 (d) of this opinion. Thus, the only inadequacy present relates to the merits of the plaintiffs' position rather than to the procedural posture of the case.

(b) The defendants also claim that, because the Attorney General has indicated that he will not prosecute the plaintiffs for distributing "in-house" newspapers to employees or communications to stockholders that advocate their position on the GIT, there is no actual controversy (see G. L. c. 231A, § 1) presented as to that matter. However, there is an actual controversy presented as to the statute's general application, scope and construction, and resolution of that controversy will of necessity involve resolution of the problem of "in-house" publications and communications. Consequently, even if we were to determine that the Attorney General's stated position vitiates the existence of a controversy on the "in-house" issue standing alone, the case is nevertheless in a posture which requires determination of that narrow issue as part of the broader issue of the statute's general scope. Thus, the case is properly before us and we turn now to the constitutional issues presented.

3. *First Amendment Considerations.*

The plaintiffs' first constitutional claim is that G. L.

c. 55, § 8, violates their rights under the First Amendment to the United States Constitution. They argue that the section is invalid on its face, and that it is overbroad and void for vagueness. Alternatively they claim that, even if facially valid, the statute is unconstitutional as applied to them. The plaintiffs argue further that they are "artificial persons" and so cannot act or communicate except through representatives or third parties, whose actions or communications necessarily involve an expenditure by the plaintiffs. In essence, they assume a corporate right to free speech under both the Federal and State Constitutions and also assume that a prohibition of the expenditure of corporate funds impermissibly precludes the exercise of that right. It is clear that an act which limits either contributions or expenditures "operate[s] in an area of the most fundamental First Amendment activities." *Buckley* v. *Valeo,* 424 U.S. 1, 14 (1976). It is also clear that any statutory limitation on expenditures in regard to the electoral process imposes "significantly more severe restrictions on protected freedoms of political expression and association than do its limitations on financial contributions." *Buckley* v. *Valeo,* at 23. "[S]peech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another." *Virginia State Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 761 (1976). Nor does the fact that speech is exercised by a profit-making entity defeat per se its constitutionally protected aspects. *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 266 (1964). We note in this regard that G. L. c. 55, § 8, precludes both corporate contributions and corporate expenditures on political questions as to which the corporation's property, business or assets are not materially affected.[11]

---

[11] General Laws c. 55, § 1, defines the distinction between "contribution" and "expenditure." The plaintiffs rely primarily on the prohibition on expenditures in making their argument; the defendants argue that while the plaintiffs now allege they wish to "expend," the record shows that in 1972 all of the plaintiffs except Digital Equipment Cor-

We start then with the premise that G. L. c. 55, § 8, potentially implicates the First Amendment, and that any distinction between "speech" and "conduct," cf. *United States* v. *O'Brien,* 391 U.S. 367 (1968), has no validity here. See *Buckley* v. *Valeo, supra.* But this premise does not reach a more basic question here involved, namely, whether business corporations, such as the plaintiffs, have First Amendment rights coextensive with those of natural persons or associations of natural persons. Therefore, before we consider the plaintiffs' various claims, we must first consider whether and to what extent corporations possess First Amendment rights.

(a) *The First Amendment rights of corporations.* It is undisputed that a corporation "is neither a citizen of a state nor of the United States within the protection of the privileges and immunities clauses of Article IV, § 2 of the Constitution and the Fourteenth Amendment." *Asbury Hosp.* v. *Cass County,* 326 U.S. 207, 210-211 (1945). Furthermore, it has been stated that "[t]he liberty referred to in [the Fourteenth] Amendment is the liberty of natural, not artificial persons." *Northwestern Nat'l Life Ins. Co.* v. *Riggs,* 203 U.S. 243, 255 (1906). See *Hague* v. *Committee for Indus. Organizations,* 307 U.S. 496, 527 (1939). But there are limits on the extent to which corporations may be totally deprived of what would be considered due process "liberty" rights if normal persons were involved.

The Supreme Court has recognized that corporations are entitled to some Fourteenth Amendment protections whether they are viewed as "citizens" or not. In *Grosjean* v. *American Press Co.,* 297 U.S. 233, 244 (1936), the Court stated: "Appellant contends that the Fourteenth Amendment does not apply to corporations; but this is only partly true. A corporation, we have held, is not a 'citizen' within

---

poration made contributions to a political committee in regard to the referendum question then in issue. Since G. L. c. 55, § 8, imposes a complete bar to either contributions or expenditures, the distinction made between them in *Buckley* v. *Valeo, supra,* is not helpful here. Also, under the view we take of this case it does not appear to be a relevant one.

the meaning of the privileges and immunities clause. [Citation omitted.] But a corporation is a 'person' within the meaning of the equal protection and due process of law clauses, which are the clauses involved here." The Supreme Court had previously indicated in *Pierce* v. *Society of Sisters*, 268 U.S. 510, 535 (1925), that "[a]ppellees are corporations and therefore, it is said, they cannot claim for themselves the liberty which the Fourteenth Amendment guarantees. Accepted in the proper sense, this is true. *Northwestern Life Ins. Co.* v. *Riggs*, 203 U.S. 243, 255 [1906]; *Western Turf Association* v. *Greenberg*, 204 U.S. 359, 363 [1907]. But they have business and property for which they claim protection."

The plaintiffs concede in their brief that they are "only asserting rights which stem from the equal protection and due process of law clauses." What they appear to argue is that such rights as corporations may have under such clauses are coextensive with the First Amendment rights of natural persons. They cite no case to this proposition nor do we find this aspect of their argument persuasive.

It seems clear to us that a corporation does not have the same First Amendment rights to free speech as those of a natural person, but, whether its rights are designated "liberty" rights or "property" rights,[12] a corporation's property and business interests are entitled to Fourteenth Amendment protection. *Pierce* v. *Society of Sisters, supra.* See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 251 (1946). It is also clear that, as an incident of such protection, corporations possess certain rights of speech and expression under the First Amendment.[13]

---

[12] As Chief Justice Tauro and Justice Reardon recognized in *First Nat'l Bank I,* such characterizations may not be relied on to establish that corporations have no First Amendment rights: "The Attorney General concludes . . . that . . . a corporation cannot claim protection under the term 'liberty' in the due process clause, [and that] a corporation cannot claim a right to freedom of expression, because that is a liberty protected by the First Amendment, not a property right. We cannot agree." *Id.* at 583.

[13] The constitutional discussion by the two Justices in *First Nat'l Bank I* suggests that there may be a difference between the First

Thus, we hold today that only when a general political issue materially affects a corporation's business, property or assets may that corporation claim First Amendment protection for its speech or other activities entitling it to communicate its position on that issue to the general public. This limitation is identical to the legislative command in the first sentence of G. L. c. 55, § 8. Put in another way, the Legislature has clearly identified in the challenged statute the parameters of corporate free speech.

(b) *The "unconstitutional as applied" attack.* The plaintiffs' alternative First Amendment claim is that § 8 is invalid as applied to them because adoption of a personal GIT would materially affect their business, property or assets. To support this claim the plaintiffs point to our decision in *Lustwerk* v. *Lytron, Inc.,* 344 Mass. 647 (1962), and to the opinion of Chief Justice Tauro in *First Nat'l Bank I.* The plaintiffs conclude that those opinions held the issue of a personal GIT to be "material *per se* to the business of all corporations operating within Massachusetts." We cannot agree that that is the import of those two opinions. *Lustwerk* was a director-shareholder's suit to enjoin the defendant corporation and its other directors from making an expenditure related to a general (corporate and personal) GIT referendum on the ground that such an expenditure would be ultra vires. We concluded, "[W]e cannot say on the basis of this somewhat meager record that a board of directors of a business corporation could not reasonably decide that its business would be materially affected by the grant of such ... [a] taxing power." *Lustwerk* v. *Lytron, Inc., supra* at 651.

As we have previously indicated, *First Nat'l Bank I*

---

Amendment rights afforded corporations in the business of communications and corporations pursuing general commercial interests. *Id.* at 584-585. See *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964); *Joseph Burstyn, Inc.* v. *Wilson,* 343 U.S. 495 (1952). None of the plaintiffs here claims to be part of the "institutional press," nor do they claim the right of "free press." Nor has anyone asserted that G. L. c. 55, § 8, bars the press, corporate, institutional or otherwise, from engaging in discussion or debate on the referendum question. Consequently we need not venture an opinion on such matters.

involved a referendum on a general GIT. Even the two Justices reaching the constitutional question acknowledged the "materially affects" limitation, concluding only that "the plaintiffs' business interests [may be] reasonably considered to be materially affected by the proposed [general GIT] constitutional amendment . . . ." 362 Mass. at 591. As a result we think that the plaintiffs' extrapolation of the holdings in *Lustwerk* and *First Nat'l Bank I* to the current proposed amendment is unwarranted. While we do not doubt that those opinions stand for the proposition that the possible adoption of a corporate GIT or a corporate *and* personal GIT materially affects the business of all corporations in this Commonwealth, that issue is not before us at this time. Neither *Lustwerk* nor *First Nat'l Bank I* is controlling as to the validity of the second sentence of § 8 since the present referendum question provides no authorization for legislative enactment of a corporate graduated income tax.[14] The only question is whether the legislative judgment that "[n]o question submitted to the voters solely concerning the taxation of the income, property or transactions of individuals shall be deemed materially to affect the property, business or assets of the corporation" was a valid one. See G. L. c. 55, § 8. We cannot say that there was no rational basis for this legislative determination. Cf. *First Nat'l Bank I* at 592-597 (Quirico, J., concurring in result).

The statutory prohibition can only be invalid as to the plaintiffs if they have demonstrated that the proposed amendment does in fact materially affect their business. The plaintiffs have not made such a showing. Indeed, the plaintiffs admit as much in their brief, stating that "[t]here is no express finding herein that the plaintiffs' material interests would in fact be affected by the ballot question." The plaintiffs attempt to overcome this failure of proof in

---

[14] The plaintiffs point out that Chief Justice Tauro indicated in *First Nat'l Bank I* that the Legislature may already have the power to impose a graduated corporate excise tax on the basis of income. This question is also not before us.

a number of ways which we discuss in the margin.[15] It is sufficient to note here that the plaintiffs' failure cannot be excused by any of their arguments. We conclude that, on this record, the statute is not unconstitutional as applied to the plaintiffs.

Nevertheless it is the plaintiffs' claim that the statutory proviso that "[n]o question submitted to the voters solely concerning the taxation of the income, property or transactions of individuals shall be deemed materially to affect the property, business or assets of ... [a] corporation," is overbroad and void for vagueness. We turn now to those concerns, treating the overbreadth issue first.

(c) *Overbreadth.* The doctrine of overbreadth, which applies to a statute that restricts First Amendment rights, allows a plaintiff to attack the statute in question as invalid on its face even if his speech or conduct "might be of the class properly the subject of State regulation, for '[i]t matters not that the words ... used might have been constitutionally prohibited under a narrowly and precisely drawn statute.'" *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 585 (1975), quoting from *Gooding* v. *Wilson,* 405 U.S. 518, 520 (1972). "[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others

---

[15] The plaintiffs state that "[i]n the nature of things there could not be such a finding in this case which was commenced in April [1976]." It seems clear that, in the nature of things, the plaintiffs had control over the commencement of this litigation, and the fact that the case is before us on a stipulation of facts rather than after a full trial on the merits must be charged to the plaintiffs. As the defendants point out, the amendment of § 8 in question occurred in the spring of 1975 (see St. 1975, c. 151, § 1). The plaintiffs could then have sought declaratory relief and pursued a trial on the merits with sufficient time for adjudication before the November, 1976, election. They did not, and their failure to do so cannot excuse the absence of a finding that they are in fact materially affected by the proposed amendment.

The plaintiffs further argue that all they need show is a "reasonable belief" that the proposed amendment would materially affect them. While such a belief is relevant to the question whether such an expenditure would be ultra vires, cf. *Lustwerk* v. *Lytron, Inc.,* 344 Mass. 647, 651 (1962), standing alone it is not relevant to the question presented herein.

may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Broadrick* v. *Oklahoma*, 413 U.S. 601, 612 (1973). See *Commonwealth* v. *Dennis*, 368 Mass. 92 (1975). Thus, even if the plaintiffs' expenditure of moneys can be regulated constitutionally by the Legislature, we must still determine whether § 8 applies to speech or other activities that cannot be constitutionally regulated.

The plaintiffs argue that the statute is overbroad in that it appears to prohibit activities which are protected, such as the use of "in-house" newspapers and publications or communications to stockholders on the question of a personal GIT; the participation by corporate employees (at corporate expense) in discussions at legislative hearings as to the advisability of adopting a personal GIT; and the publishing of letters to the editor on that subject in corporate newsletters. The constitutionality of a statute alleged to proscribe activities of this nature was before the Supreme Court in *United States* v. *C.I.O.*, 335 U.S. 106 (1948). In words equally applicable to this case, the Court stated: "If [the law] were construed to prohibit the publication, by corporations . . . in the regular course of conducting their affairs, of periodicals advising their [employees or stockholders] of danger or advantage to their interests from the adoption of measures, . . . the gravest doubt would arise in our minds as to its constitutionality." *Id.* at 121. However, we also agree with the Supreme Court that "[i]t would require explicit words in an act to convince us that [the Legislature] intended to bar a trade journal, a house organ or a newspaper, published by a corporation, from expressing views on candidates or political proposals in the regular course of its publication. It is unduly stretching language to say that the [employees] or stockholders are unwilling participants in such normal organizational activities, including the advocacy thereby of governmental policies affecting their interests, and the support thereby of candidates [or proposals] thought to be favorable [or adverse] to their interests." *Id.* at 123. There are no such "explicit words" in § 8 and we do not think

that the Legislature intended it to apply to such activities. Nor is there any language in § 8 which would preclude corporate officers, directors, stockholders or employees from expressing their views publicly on the merits of such a proposed referendum by participation in television or radio discussions, news conferences, statements issued to the press or through other similar means not involving contributions or expenditure of corporate funds. We add in this regard that the plaintiffs' claim that a corporation, being an artificial person, cannot communicate its views except by the expenditure of additional funds is demonstrated neither by this record nor the well known facts of American society. We credit the Legislature with knowledge of such facts and, in doing so, find that § 8 does not bar such activities which are in the normal course of the plaintiffs' corporate affairs and do not involve corporate expenditures specifically designed to influence the electoral process. This type of activity does not involve the type of corporate expenditures or injection into political campaigns or referenda which the Legislature sought to regulate in enacting § 8.

So construed, we believe that the statute avoids any potential overbreadth problems; "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick* v. *Oklahoma,* 413 U.S. 601, 613 (1973), quoted in *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 594 (1975). Because these activities mentioned by the plaintiffs are not included within the legislative proscription in § 8 against contribution or expenditure of funds or other things of value for the purpose of "influencing or affecting the vote on any question submitted to the voters, other than one materially affecting any of the property, business or assets of the corporation," and the more specific command as to a personal GIT, we conclude that the statute is not "susceptible of application to protected expression." *Gooding* v. *Wilson,* 405 U.S. 518, 523 (1972). In adopting this construction we recognize that "our task is not to destroy the [statute] if we can, but to construe it, if consistent with

the will of [the Legislature], so as to comport with constitutional limitations." *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers,* 413 U.S. 548, 571 (1973).

(d) *The void for vagueness issue.* "[T]he vagueness doctrine ensures that a statute be drawn with the requisite clarity so that a person has sufficient notice of what conduct on his part may be criminal. In addition, it ensures that no statute have such a 'standardless sweep' as to allow discriminate enforcement." *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 595 n.15 (1975), and cases cited. Although there is thus a distinction between void for vagueness scrutiny and that scrutiny applicable to a claim of overbreadth, "the 'void for vagueness' doctrine often overlaps in effect the overbreadth doctrine." *Id.* See generally *Karlan* v. *Cincinnati,* 416 U.S. 924, 925 (1974) (Douglas, J., dissenting). Indeed, the plaintiffs' claims herein with respect to vagueness are almost identical to their claims with respect to overbreadth. In effect they argue that the same statutory language that they perceive to be overbroad is also unconstitutionally vague and indefinite. We disagree.

A statute is void for vagueness only if "men of common intelligence must necessarily guess at its meaning . . . ." *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926). See *Broadrick* v. *Oklahoma,* 413 U.S. 601, 607 (1973), and cases cited. It must be recognized in a vagueness inquiry, however, that "[w]ords inevitably contain germs of uncertainty," *id.* at 608, and that "there are limitations in the English language with respect to being both specific and manageably brief . . . ." *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers, supra* at 578-579. Thus, "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise." *United States* v. *Harriss,* 347 U.S. 612, 618 (1954).

On consideration of these constitutional guidelines, we hold that § 8 is not invalid by reason of being impermissibly vague. We recognize that the "materially affects"

limitation is general in nature; but we also note that the statutory proscription in question here — the prohibition against corporate expenditures on a referendum question *solely* concerning a personal GIT — is both precise and definite. Furthermore, as to those activities which the plaintiffs claim may be within the specific proscription,[16] thereby making it unconstitutionally vague, we suggest they are so similar in nature to the types of activities claimed to make the statute overbroad that our limiting construction adopted in part 3 (c) of this opinion, *supra,* supplies any definiteness which the proscription otherwise might lack. Such a construction is an appropriate way to avoid invalidation on grounds of vagueness. *Winters* v. *New York,* 333 U.S. 507, 510 (1948). See *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 595-598 (1975). We recognize that, even in light of limiting construction, "the prohibitions may not satisfy those intent on finding fault at any cost"; but we believe that "they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers, supra* at 579.[17] Consequently, we conclude that § 8, as construed in this opinion, is not unconstitutionally vague.

(e) *Articles 16 and 19 of the Massachusetts Declaration of Rights.* The plaintiffs claim that G. L. c. 55, § 8, is invalid by virtue of the provisions of arts. 16 and 19 of the Declaration of Rights of the Constitution of the Commonwealth.

---

[16] The plaintiffs wonder whether an economist employed by one of the plaintiff banks would be in violation of § 8 when his or her comments on the effect of adoption of a personal GIT are sought by a newspaper and he or she responds during working hours, and whether a lunchtime address on that subject by a corporate officer to a chamber of commerce would violate § 8. We think it clear from our overbreadth discussion that neither of these activities would violate the statute.

[17] In terms of this case, "even if the outermost boundaries of [§ 8] may be imprecise, any such uncertainty has little relevance here, where ... [the plaintiffs' intended] conduct falls squarely within the 'hard core' of the statute's proscriptions ...." *Broadrick* v. *Oklahoma,* 413 U.S. 601, 608 (1973). *Parker* v. *Levy,* 417 U.S. 733, 757 (1974).

Article 16, as appearing in art. 77 of the Amendments, provides as follows: "The liberty of the press is essential to the security of freedom in a state; it ought not, therefore, to be restrained in this commonwealth. The right of free speech shall not be abridged."

Article 19 states: "The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good: give instructions to their representatives, and to request of the legislative body, by way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer."

The plaintiffs' arguments under these provisions generally track their First and Fourteenth Amendment claims, except that they add here the claim that, since neither of these articles restricts itself to "persons" in describing the rights protected, corporations are necessarily included within their scope. To support these claims they rely primarily on the opinion of the court in *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230 (1946), and the opinion of the two Justices in *First Nat'l Bank I.* Neither opinion supports the contentions of the plaintiffs.

*Bowe* involved labor unions, not corporations. To the extent there are dicta therein relating to corporations and their rights, it is clear that this court there assumed such a right to free speech to exist — as do we — where a referendum question "might materially affect the property, business or assets of the corporation." *Id.* at 234. Nor does the opinion of the two Justices in *First Nat'l Bank I* go any further. 362 Mass. at 585-586.

Since we have stated previously that the freedoms protected by arts. 16 and 19 are "comparable" to those guaranteed by the First Amendment, *Bowe* v. *Secretary of the Commonwealth, supra,* we see no need to elaborate further on our prior discussion of free speech claims by the plaintiffs.[18] General Laws. c. 55, § 8, as applied to these plaintiffs,

---

[18] The amendment of art. 16 in 1948 subsequent to *Bowe* adding the sentence, "The right of free speech shall not be abridged," does not have relevance to arguments here raised. *Bowe* assumed such a right to exist. See *First Nat'l Bank I* at 586.

is not invalid by virtue of these provisions of the Declaration of Rights.

4. *The Equal Protection Issue.*

The plaintiffs' next constitutional claim is that the § 8 prohibition denies them their right to equal protection of the laws under the Fourteenth Amendment and art. 1 of the Declaration of Rights. They argue that because the prohibition impinges on a fundamental constitutional right (free speech) strict scrutiny is required. Alternatively they conclude that, even if such scrutiny is not required, the statute must fall because it does not bear a reasonable relation to a permissible governmental objective. The plaintiffs find invidious discrimination in the statute's failure similarly to restrict labor unions, voluntary associations such as business trusts, real estate investment trusts, charitable corporations, and limited or general partnerships.

We think that the appropriate standard of review on this issue is not the strict scrutiny that the plaintiffs suggest is apposite but, rather, is the traditional scrutiny involving economic matters. While we agree with the plaintiffs that where free speech is involved strict scrutiny is required (see *San Antonio Independent School·Dist.* v. *Rodriquez,* 411 U.S. 1, 17 [1973]; *Police Dept. of Chicago* v. *Mosley,* 408 U.S. 92, 101 [1972]), we have already concluded that the plaintiffs do not possess First Amendment rights on matters not shown to affect materially their business, property or assets. Our inquiry, therefore, is whether the legislative classification "rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced [are] treated alike." *F.S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 (1920). See *Pinnick* v. *Cleary,* 360 Mass. 1, 27-28 (1971).

We believe that the legislative classification in § 8 rests on such a difference with respect to all the groups pointed to by the plaintiffs except business trusts and real estate investment trusts. That difference is that general business corporations, unlike labor unions or charitable corpora-

tions, have shareholders. Section 8 could represent a legislative desire to protect such shareholders against ultra vires activities, and could thus be "reasonably related to a legitimate public purpose." *Pinnick* v. *Cleary, supra* at 27-28.

With respect to the Legislature's noninclusion of business trusts and real estate investment trusts which also have "shareholders," the Legislature may justifiably have concluded that such trusts did not present the type of problem in this area presented by general business corporations. See *Liggett Co.* v. *Lee*, 288 U.S. 517, 541 (1933) (Brandeis, J., dissenting in part). Furthermore, "[w]hen legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 417 (1972), and cases cited. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc.* v. *New York*, 336 U.S. 106, 110 (1949). See *Buckley* v. *Valeo*, 424 U.S. 1, 99 (1976).

5. *Creation of an "Irrebuttable Evidentiary Presumption."*

The plaintiffs' final argument is that the recent amendment of § 8 creates an irrebuttable evidentiary presumption which deprives them of their right to due process of law. They argue that the legislative statement that "[n]o question submitted to the voters solely concerning the taxation of the income, property or transactions of individuals shall be deemed materially to affect the property, business or assets of . . . [a] corporation" (§ 8) conclusively presumes "a fact which constitutes one of the elements of the crime as defined by the Legislature."

We believe that this argument is without merit for the simple reason that the statutory prohibition does not utilize the device of a presumption to aid the prosecution in proving their case beyond a reasonable doubt. As our previous discussion demonstrates, the Legislature may

validly proscribe corporate expenditures on a referendum question solely relating to adoption of a personal GIT. Although § 8 as amended may be inelegantly written, it requires the prosecution to prove that: (1) the defendant is a corporation; (2) the defendant corporation made an expenditure; (3) the purpose of the expenditure was to influence or affect the vote; and (4) that the vote was on a question solely relating to the taxation of the income, property, or transactions of individuals. Unless the Commonwealth can prove these elements beyond a reasonable doubt, *Commonwealth* v. *Kostka*, 370 Mass. 516, 532 (1976); *In re Winship*, 397 U.S. 358, 364 (1970), it cannot secure a conviction for the specific crime of making an expenditure solely concerning a personal GIT.[19]

Unlike a statute employing a presumption or an inference which allows the trier of fact to find proof of one element of a crime after another element of the crime has been established (see generally *Commonwealth* v. *Pauley*, 368 Mass. 286 [1975], and cases discussed therein; McCormick, Evidence § 342 [2d ed. 1972]), the specific crime set out in § 8 requires direct proof of all its elements.[20] Consequently, we find the plaintiffs' reliance on cases like *Turner* v. *United States*, 396 U.S. 398 (1970), *Leary* v. *United States*, 395 U.S. 6 (1969), and *Tot* v. *United States*, 319 U.S. 463 (1943), misplaced. Section 8 does not contain an irrebuttable presumption; nor does it deprive the plaintiffs of their right to due process of law.

---

[19] This specific crime is admittedly related to the general crime of making such an expenditure on a matter which does not materially affect a corporation's property, business or assets, but we think that the specific prohibition is a separate crime. It appears that the plaintiffs' "conclusive presumption" attack is based on reading the two crimes together, a result perhaps attributable to the legislative redrafting and amending process.

[20] The plaintiffs' argument would have considerable force if the statute indicated that all corporate contributions on a referendum question involving a general GIT were presumed to be expenditures on a GIT solely affecting individuals. That, of course, is not the case here but it is that type of situation which, by employing a presumption as part of the prosecution's case-in-chief, might well violate due process standards.